# United States District Court
# District of Massachusetts

|  |  |
|---|---|
| METRO MOTOR SALES, INC., )<br>d/b/a/ PAT'S SERVICE CENTER, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>CITY OF WORCESTER, GARY J. GEMME, )<br>And THOMAS F. ZIDELLIS, )<br> )<br>Defendants. ) | CIVIL ACTION<br>No. 13-40112-TSH |

### ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY ORDER (Docket No. 2)
### December 9, 2013

HILLMAN, D.J.

### Background

Plaintiff Metro Motor Sales, Inc. ("Plaintiff" or "Pat's") alleges that the City of Worcester (the "City"), Gary J. Gemme ("Gemme"), and Thomas F. Zidellis ("Zidellis") (collectively, "Defendants") improperly terminated a towing contract between Plaintiff and the City. Based on this allegation, Plaintiff brought claims against the Defendants for breach of contract (Count II), a violation of 42 U.S.C. s. 1983 (Count III), a violation of M.G.L. c. 12 s. 11I (Count IV), unjust enrichment (Count V), and against Gemme and Zidellis for intentional interference with contract (Count VI). Plaintiff's complaint also seeks a Declaratory Judgment (Count I) that the defendants wrongfully repudiated their contract and Mandamus or a Writ of Certiorari ordering the immediate resumption of Pat's contract (Count VII).  Plaintiff now asks for a preliminary order requiring the Defendants to reinstate that contract immediately.

1

In December 2010, the City awarded Plaintiff a contract granting Plaintiff exclusive towing rights in certain zones through December 2015 in exchange for annual payments to the City. The executed contract between the Plaintiff and the City (the "Contract"), titled "Service Agreement" incorporated the bid proposal specifications ("Specifications"). The Contract provides, among other things, that the City can terminate the Contract if the contractor is not performing in accordance with all the terms and conditions of the Contract. On or about September 5, 2013 Plaintiff received a "Notice of Termination" terminating the Contract effective September 11, 2013. The Notice of Termination cited to a section of the Contract that states that the contractor "shall be bound, in the performance of the agreement, to all provision of law or regulations applicable," and to a section of the Specifications that states that "Tow company and storage yard operators and employees shall deal with owners and operators of towed vehicles in a polite and courteous manner at all times." Plaintiff denies it failed to perform in accordance with the Contract, and alleges the City terminated the Contract for political reasons and due to the alleged personal animus of Gemme, the Chief of Police, towards Pat's owner.

A memo written by Gemme advising the City to terminate the Contract was attached to the Notice of Termination. That memo details that the Worcester Police received 261 emergency calls for police to respond to Pat's. Of those, 203 were routine incidents, but there were 2 kidnapping incidents, 2 assault and batteries, 12 larcenies from motor vehicles, 27 disorderly person reports, and 15 incidents involving fights, harassment, threats, malicious mischief, or other disturbances. Plaintiff claims many of the calls came from its own employees seeking assistance with car owners who were angry that their car had been towed. One incident in May 2009 involved five Pat's employees being charged with assault and battery to intimidate with

bodily injury, assault and battery with serious bodily injury, kidnapping, and civil rights violation with serious injury. The victims, two customers, were allegedly subjected to racial slurs while being beaten. One of the employees has pled guilty to two counts each of kidnapping, assault and battery to intimidate, assault and battery, and a civil rights violation. In December 2011, Police responded to a reported assault and battery at Pat's. They arrested two Pat's employees, who are also the sons of the owner, on assault and battery charges as well as kidnapping and criminal civil rights violations. One employee has pled guilty to these charges. In addition, Gemme's memo lists numerous complaints of larceny from the motor vehicles parked at or behind Pat's, as well as a complaint of verbal abuse.

Pat's did not respond to the City between the time the City sent the Notice of Termination and the day the termination became effective. The City awarded and executed contracts with four other towing companies, giving them the right to tow in the zones previously covered by Plaintiff. On September 12, 2013 Plaintiff filed its complaint and the present motion for injunctive relief.

## Discussion

A district court faced with a motion for a preliminary injunction must assess the following four elements: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). The party seeking the preliminary injunction bears the "burden of providing a factual basis sufficient to

justify a preliminary injunction." *Aspect Software, Inc. v. Barnett*, 787 F.Supp.2d, 118, 121 (D. Mass. 2011).

"The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002). Here, Plaintiff has not demonstrated a likelihood of success. The Termination Notice and attached memo, submitted by Plaintiff as exhibits to its complaint, show the City had ample justification for terminating the Contract under its terms. Plaintiff has not shown that any of the Defendants acted wrongfully in terminating the contracted or that the City was unjustly enriched; again, the evidence shows termination was permissible under the terms of the Contract. Therefore Plaintiff is not likely to succeed on Counts I, II, or V. Plaintiff has put forward no credible evidence or allegations to show that Defendants interfered with Plaintiff's civil rights through threats, intimidation, or coercion, making success on Count IV unlikely. *See* M.G.L. ch. 12 s. 11H, 11I.

Plaintiff is also unlikely to succeed on its s. 1983 claim. "Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 7 (1st Cir. 2005). Here, Plaintiff claims Defendants denied Plaintiff its right to procedural due process by terminating the Contract without a hearing. To succeed on a procedural due process claim must show that the Defendants acted under color of state law and "that the plaintiff was deprived of constitutionally protected property because of defendants' actions, and that the deprivation occurred without due process of law." *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992). It is undisputed that the Defendants

acted under color of state law and that Defendants did not give Plaintiff the opportunity for a hearing.

Defendants argue that Plaintiff cannot succeed on its s. 1983 claim because the Contract was not a constitutionally protected property interest. Defendants correctly point out that the First Circuit has found "with regularity bordering on the echolalic" that "the existence of a state contract, simpliciter, does not confer upon the contracting parties a constitutionally protected property interest" and therefore "a simple breach of contract does not amount to an unconstitutional deprivation of property." *Redondo-Borges*, 421 F.3d at 10; *see also Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981) ("A mere breach of contractual right is not a deprivation of property without constitutional due process of law….Otherwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case."); *S&D Maint. Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988) ("An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection.").

The cases cited by Plaintiff do not support its position that there is a protected property right in its Contract. In *Park Drive Towing, Inc. v. City Of Revere*, 442 Mass. 80 (2004), there was no due process, or any other Constitutional claim, and thus no relevant analysis of constitutionally protected property rights. In *Abercrombie v. City of Catoosa*, 896 F. 2d. 1228 (10th Cir. 1990) the property interested was created by statute, not by contract, making the case inapplicable here. The other cases cited merely stand for the proposition that a property interest may be created by contract. While it is true that there are certain special circumstances in which state contracts do give rise to protected property interests, this is not such a circumstance. *See,*

*e.g.*, *Linan–Faye Constr. Co. v. Hous. Auth.*, 49 F.3d 915, 932 (3d Cir. 1995) (finding that state contracts can give rise to a constitutionally protected interest when they confer a protected status, such as welfare benefits or tenure, or include a provision that the state entity can only terminate the contract for cause).  Courts have consistently been hesitant "to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a government contractor." *S&D Maint. Co.,* 844 F.2d at 697; *see also Reich v. Beharry,* 883 F.2d 239, 242 (3d Cir. 1989) ("a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause"). This Court sees no reason to do so here.

Finally, Count VII asks for either mandamus or a writ of certiorari.  The latter is inappropriate, as a writ of certiori is a tool "to correct errors in proceedings." M.G.L. c. 249 s. 4. Here there is no proceeding to be corrected. Mandamus is a "drastic" remedy "to be invoked only in extraordinary circumstances" when the petitioner shows "clear entitlement to the relief requested." *In re Recticel Foam Corp.,* 859 F.2d 1000, 1005 (1st Cir. 1988).  As explained above, Plaintiff has not shown "clear," or even a likelihood of, entitlement to the relief requested, that is, reinstatement of the Contract. Therefore there is no likelihood of success on this count either.

Where, as here, there is no likelihood of success on the merits, the inquiry need go no further, as "a showing of likelihood of success on the merits is essential to the issuance of a preliminary injunction." *New Comm Wireless Servs., Inc.*, 287 F.3d at 13-14.

## **Conclusion**

For the reasons set forth above, the Court finds that the Plaintiff is not entitled to a preliminary injunction and Plaintiff's Motion for Preliminary Order (Docket No. 2) is therefore **denied**.

SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**